**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**INDIANA INSURANCE COMPANY, an Indiana Corporation,**

Plaintiff,

v.

**GRAND FOODS, INC., a Minnesota Corporation,**

Defendant.

Civil No. 01-177 (ADM/JGL)

**O R D E R**

APPEARANCES

Robert T. Stich, Esq., and Louise A. Behrendt, Esq., on behalf of Plaintiff

Robert P. Thavis, Esq., and Steven P. Zabel, Esq., on behalf of Defendant

JONATHAN LEBEDOFF, Chief United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Chief Magistrate Judge of District Court on July 30, 2002 on Defendant's Motion to Compel Discovery (Doc. No. 26). The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

## I. FACTS

This case arises from an insurance coverage dispute. Defendant was a manufacturer of sandwiches which were sold in vending machines and

FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

cafeterias. In March and April 2000, Defendant's facilities were found to be contaminated with lysteria. Defendant immediately closed its facilities, but hoped to re-open once the problem was corrected. Defendant was unable to do so. Instead, Defendant found it necessary to relocate. Defendant asserts that Plaintiff concurred with this solution, promised the insurance monies necessary to make it possible, and encouraged Defendant to begin the process of relocating. The monies were never forthcoming, and Defendant ceased operations permanently in September 2000.

In response to Defendant's request for insurance coverage, Plaintiff apparently took a variety of positions. According to Defendant, Plaintiff first denied coverage, then acknowledged coverage, then denied coverage again. Defendant asserts that it was forced to shut down operations because it was unable to relocate once Plaintiff refused to pay the costs of getting back into business.

Plaintiff brought a declaratory judgment action, arguing that under the insurance policy at issue in this case it was not liable for Defendant's losses. (Doc. No. 1.) Defendant filed counter claims for, inter alia, breach of contract; negligent/fraudulent inducement; and bad faith "in failing to fairly investigate, evaluate, settle and resolve [Defendant's] claims." (Doc. No. 3 at 8, 10.)

In the instant motion, Defendant seeks an order compelling the production of certain requested documents, verification of interrogatory answers, and permission to conclude depositions after the requested documents have been produced. Plaintiff represents that it does not oppose scheduling certain depositions after document production is complete, and that it will produce any information provided to its expert but not yet provided to Defendant. Defendant does not take issue with these offers. Therefore, these parts of Defendant's motion are denied as moot. The Court will now address the outstanding discovery issues.

## II. DISCUSSION

The Federal Rules of Civil Procedure provide for liberal discovery. See Fed. R. Civ. P. 26(b)(1); Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978); Hickman v. Taylor, 329 U. S. 495, 501 (1947). "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . [and] reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Limited only by the broad scope of Rule 26(b), a party has the right to request any information within the "possession, custody, or control" of the party being served. Fed. R. Civ. P. 34(a). Although discovery is broad, it is not limitless, and a court may limit discovery if the discovery sought is, inter alia, cumulative or overly burdensome. See Fed. R. Civ. P. 26(b)(2).

**A. Doc. Req. Nos. 9, 10, 11, and 12**

Defendant seeks production of:

> [a]ll documents created and/or in use at any time since January 1, 1999 which refer or relate to any other claim for insurance, whether or not litigated, as to which you denied coverage, or reserved the rights to contest coverage based on [the three exclusions and one defense at issue in this case.]

Defendant argues that information related to Plaintiff's prior interpretations of the exclusions and defense are relevant to the issues in the instant case. Defendant asserts that since Plaintiff represents that no claims manuals or instructions regarding these exclusions exists, the only way for Defendant to know how Plaintiff routinely interprets these exclusions is to look at Plaintiff's past practice regarding the exclusions.

Plaintiff first objected to these requests on the bases of vagueness, overbreadth, burdensomeness, and inability to lead to the discovery of admissible evidence. At the motion hearing, Plaintiff objected to Defendant's requests for two reasons: (1) Plaintiff does not keep records filed by the reasons it declined coverage so it must examine all 48,000 of its files by hand to determine which, if any, contain identical coverage denials, and (2) such a search would be unduly burdensome.

At the motion hearing, Defendant offered to limit its request to claims handled through Plaintiff's corporate claims office or by a large loss specialist since deposition testimony has revealed that large claims are handled

in these two ways. Defendant's claim was handled by the corporate claims office. Defendant asserts that this limitation would only necessitate a search of approximately ten percent of Plaintiff's total files. Plaintiff responds that a manual search of 4800 files is still unduly burdensome, especially in light of the fact that deposition testimony has revealed that none of Plaintiff's employees can recount any other claims which were denied based on the exclusions at issue in this case.

The Court finds that information relating to other policies is relevant to this case. It is important for Defendant to understand how Plaintiff has addressed similar policy language in the past. This is especially true in light of Defendant's bad faith and negligent/fraudulent inducement claims. Defendant knows how Plaintiff responded to its claims for coverage. What it wants to know is how that decision squares with Plaintiff's prior interpretation of similar policies and its handling of similar claims. Moreover, courts that have addressed this issue have found information related to other policies issued by the same insurer relevant. See Nestle Foods Corp. v. Aetna Cas. & Sur. Co., 135 F.R.D. 101, 106 (D.N.J. 1990) (allowing discovery of drafting language in policies other than those held by Plaintiff); Minn. Mining & Mfr. Co. v. Commercial Union Ins. Co., No. 88-325, 1989 WL 241716, at *1-2 (D. N.J. Oct. 13, 1989) (allowing discovery related to policies involved in two prior actions); Indep. Petrochemical Corp. v. Aetna Cas. & Sur. Co., 117 F.R.D. 283, 287

(D.D.C. 1986) (allowing discovery of other claims involving the chemical at issue in the instant litigation).

Since the Court has determined that the information Defendant seeks is relevant, Plaintiff now has the burden of proving that providing that information is overly burdensome. See Fed. R. Civ. P. 26(b)(2). The Court may limit discovery when the "burden or expense of the proposed discovery outweighs the likely benefit." Id.

In this case, Plaintiff states that it would need to go through 4800 claims files by hand in order to comply with Defendant's request. However, Plaintiff has not provided an affidavit stating how many employees this search would involve or how much time and expense Plaintiff must dedicate to such a search. Moreover, Plaintiff has acknowledged that the mere fact that production of certain documents would be burdensome, expensive, or even interfere with a party's business operations does not justify a refusal to produce relevant documents. See Wagner v. Dryvit Sys., Inc., No. 4:00CV3072, 2001 WL 1905575, at *4 (D. Neb. Aug. 1, 2001) (citing 7 Moore's Federal Practice § 34.1[3] (3rd ed. 1997)); Snowden v. Connaught Labs, Inc., 137 F.R.D. 325, 332-33 (D. Kan. 1991); In re Richardson-Merrell, Inc. Bendectin Prod. Liab. Litig., 97 F.R.D. 481, 482 (S.D. Ohio 1983). An inefficient filing system which necessitates "heavy expenditures of time and effort to produce requested

documents is not a sufficient reason" to frustrate discovery. Snowden, 137 F.R.D. at 333 (citations omitted).

Thus it is clear that Plaintiff may not hide behind its record keeping system to avoid responding to Defendant's request. However, the Court will further limit Defendant's request to claims handled by the corporate claims office, the office which handled Defendant's claim. Accordingly, Plaintiff must conduct a manual-review of the claims handled through Plaintiff's corporate claims office since January 1999. While the Court acknowledges that this may involve a large expenditure of resources, the Court finds that the benefit of the discovery will outweigh the burden it imposes. Defendant is entitled to know whether it was denied coverage only after Plaintiff learned of the magnitude of Defendant's claim, as Defendant argues. A review of other denials based on the same policy language will yield valuable information regarding Plaintiff's usual practices for denying claims. Therefore, Defendant's motion is granted as to files handled through Plaintiff's corporate claims office since January 1999, and denied as to other files. Plaintiff must produce responsive documents within thirty days of this Order.

**B. Interrogatory No. 12 & Document Request No. 19**

Defendant's Interrogatory No.12 asks Plaintiff to describe with particularity:

a. the date you initially designated a reserve amount for Grand Foods Claim;

b. the amount of reserve you initially set for Grand Foods Claim;
c. the date and nature and/or amount of any modifications to the initial reserve set by you for the Grand Foods Claim; and
d. the process and discussions preceding your decision to designate or modify a reserve for the Grand Foods Claim; and
e. each communication with each reinsurer with respect to any aspect of the Grand Foods Claim or reserves therefor.

Document Request No. 19 seeks "[a]ll documents evidencing your past and present reserves for the Grand Foods claim."

Plaintiff originally objected to these interrogatories on the bases of inability to lead to the discovery of admissible evidence, attorney-client privilege, and work product immunity. However, in its opposition papers, Plaintiff proffered arguments based on relevance. At the motion hearing, Plaintiff also argued that Defendant has already deposed three witnesses regarding Plaintiff's changing views of Defendant's case.

There is a lack of consensus regarding the discovery of an insurer's loss reserves. See Timothy M. Sukel & Mike F. Pipkin, Discovery and Admissibility of Reserves, 34 Tort & Ins. L.J. 191, 194 (Fall 1998). Therefore, courts must decide these issues on a case by case basis taking into consideration "the precise issues in the case, the likelihood that reserve information would be relevant to those issues, and the demonstrated purpose of setting the reserve." 17 Lee R. Russ & Thomas F. Segella, Couch on Insurance 3d, § 251:29 (2000). The Court will apply this analysis to the case at the bar.

### 1. <u>The Issues in This Case</u>

The case at the bar not only involves issues of coverage, but also issues of breach of good faith and fraudulent inducement. According to one expert, the relevance of loss reserves is highest in cases involving allegations of bad faith for denying coverage. <u>See</u> <u>id.</u>

### 2. <u>The Likelihood That Reserve Information Would be Relevant to the Issues</u>

Defendant argues that reserve information is relevant to the issues of the case. Specifically, Defendant argues that reserve information is relevant to the issue of bad bath insofar as it may demonstrate whether Plaintiff increased its reserves in response to evidence that Defendant's claim was larger than originally thought, and to whether Plaintiff's denial of interim payments was reasonable. Defendant proffers that if Plaintiff had set aside large reserves, it was unreasonable and malicious for Plaintiff to deny Defendant interim payments, and that Plaintiff's repeated changes of position make it necessary to investigate reserve information so as to determine if those changes were made in bad faith.

Plaintiff responds that decisions regarding reserve funds are driven by business considerations, rather than evaluations of particular claims and therefore reserve information is irrelevant to Defendant's claims. In addition, Plaintiff argues that Minnesota has never recognized a first-party bad faith

claim and therefore, such a claim is an inappropriate basis for requiring production of this information.

As mentioned above, there is case law to support both arguments. A number of cases have held that reserve information is not relevant for the very reason cited by Plaintiff. See Youell v. Grimes, 202 F.R.D. 643, 652 (D. Kan. 2001), vacated on other grounds by 168 F. Supp.2d 1233 (D. Kan. 2001); Rhone-Poulenc Rorer, Inc. v. Home Indem. Co., Civ. A. No. 88-9752, 1991 WL 237636, at *4 (E. D. Penn. Nov. 7, 1991); Leski v. Federal Ins. Co., 129 F.R.D. 99, 106 (D.N.J. 1989); Stonewall Ins. Co. v. National Gypsum Co., No. 86 CIV. 9671, 1988 WL 96159, at **6-7 (S.D.N.Y. Sept. 6, 1988). Some cases even hold that reserve information is not discoverable when the case involves bad faith claims. See Fidelity & Deposit Co. of Maryland v. McCulloch, 168 F.R.D. 516, 525 (E.D. Penn. 1996) (holding that reserve information is not relevant in a case where insurer's estimation of its own liability had no bearing on the issues of the case); Couch v. Equity Gen. Ins. Co., 80 B.R. 512, 516-17 (S.D. Cal. 1987).

On the other hand, a number of cases have held that reserve information is relevant, especially in cases where bad faith is an issue. See American Medical Syst., Inc. v. National Union Fire Ins. Co., No. Civ. A. 98-1788, 1999 WL 781495 , at **2-3 (E.D. La. Sept. 29, 1999); Athridge v. Aetna Cas. & Sur. Co., 184 F.R.D. 181, 192-93 (D.D.C. 1998); North River Ins. Co. v. Greater New York Mut. Ins. Co., 872 F. Supp. 1411, 1412 (E.D. Penn. 1995);

Lipton v. Superior Court, 56 Cal. Rptr.2d 341, 350 n.17 (Cal. Ct. App. 1996); Tackett v. State Farm & Cas., 558 A.2d 1098, 1101-02, 1105 (Del. Sup. Ct. 1988); Groben v. Travelers Indem. Co., 266 N.Y.S.2d 616, 619 (N.Y. Sup. Ct. 1965).

The only Eighth Circuit decision related to this issue is Kirchoff v. American Cas. Co., 997 F.2d 401 (8th Cir. 1993). In Kirchoff, the Eighth Circuit held that the lower court did not err when it admitted evidence of an insurer's case estimate. See id. at 405. In so holding, the Kirchoff court specifically declined to rule on the issue of the relevancy of reserve or case estimate information as it pertains to an insurer's liability. See id. However, the court found that since the case estimate information was admitted as evidence of bad faith in settlement negotiations, as opposed to evidence of liability, it was not error to admit the estimate information. See id.; see also Simon v. G.D. Searle & Co., 816 F.2d 397, 404 (8th Cir. 1987) (holding that reserve information is discoverable if relevant).

### 3. Plaintiff's Reasons for Setting Reserves

Plaintiff does not inform the Court as to why and how it sets its reserves. Rather, Plaintiff cites cases explaining how reserves are set, but offers no factual support related to its process for setting reserves.

**4. Analysis**

The Court agrees with Plaintiff that since reserve decisions are made based on many factors which have little or nothing to do with the facts of the underlying claim, reserve information is not relevant to the issue of liability. See Rhone-Poulenc Rorer, 1991 WL 237636 at *4. However, the same cannot be said regarding the issue of good faith in evaluating, settling, and resolving claims. Once the claims process begins, a claimant has the right to assume that its insurance provider is negotiating in good faith. In this case, the Court finds that information related to Plaintiff's reserves is relevant to Defendant's breach of good faith and negligent inducement claims. In order for Defendant to prove that Plaintiff negotiated in bad faith and fraudulently induced Defendant's reliance, Defendant needs to know what Plaintiff knew at the time it made various coverage decisions. Reserve information will very likely yield such information. Whether these claims will ultimately prove successful is not before this Court. However, at this point the claims are still very much at issue in this case, and under our liberal rules, this information is discoverable. In addition, the Court finds Plaintiff's boilerplate objections based on privilege unavailing. "A blanket statement that a privilege applies simply will not suffice." In re Milk Prods. Antitrust Litig., 84 F. Supp.2d 1016, 1028 (D. Minn. 1997). Therefore, this part of Defendant's motion is granted. Plaintiff must produce the requested information within thirty days of this Order.

### C. Document Request No. 20

Defendant seeks "[a]ll documents which constitute, evidence, or refer or relate to communications with any reinsurer with respect to any aspect of the Grand Foods Claim." Plaintiff originally objected to this request on the bases of inability to lead to the discovery of admissible evidence, attorney-client privilege, and work product immunity. In its moving papers and at the motion hearing, Plaintiff proffered relevancy objections.

The Court is unsure whether Defendant's request includes a request for copies of Plaintiff's reinsurance policies. The Court will assume that the request includes a desire for any relevant policies and will conduct its analysis accordingly.

The Federal Rules of Civil Procedure state that a party must produce:

> any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Fed. R. Civ. P. 26(a)(1)(D).

#### 1. Whether Reinsurance Policies Are Discoverable

Rule 26(a)(1)(D) replaced Rule 26(b)(2) and contains identical substantive language. See Fed. R. Civ. P. 26(a)(1)(D) advisory committee note (1993 amendment); Fed. R. Civ. P. 26(b)(2) (West 1993). The only difference between the two rules is that 26(b)(2) allowed discovery of insurance policies

and 26(a)(1)(D) requires disclosure of insurance policies without awaiting a discovery request.

Since the language is identical, the Court finds the reasoning behind allowing discovery of insurance policies in the first place instructive. The 1970 comments to the Rule state that "[d]isclosure is required when the insurer 'may be liable' on part or all of the judgment . . . . It is immaterial whether the liability is to satisfy the judgment directly or merely to indemnify or reimburse another after he pays the judgment." Fed. R. Civ. P. 26(b)(2) advisory committee note (1970 amendment).

Indeed, the two federal courts that have addressed this issue since the 1993 amendments have found that Rule 26(a)(1)(D) mandated disclosure of reinsurance policies. See Missouri Pacific R.R. Co. v. Aetna Cas. & Sur. Co., No. 3:93-CV-1898-D, 1995 WL 861147, at *2 (N.D. Tex. Nov. 6, 1995); Great Lakes Dredge & Dock Co. v. Commercial Union Assurance Co., 159 F.R.D. 502, 504 (N.D. Ill. 1995).

The Court finds these cases persuasive. According to the Great Lakes court, Rule 26(a)(1)(D) "does not depend on the scope of indemnification. It is enough that the reinsurers would be liable to [the] Insurers for part of any judgment based on the Policies." Id. (citation omitted); see also Missouri Pacific, 1995 WL at *2 (employing the same reasoning). Accordingly, this part of Defendant's motion is granted and Plaintiff must produce copies of its

reinsurance policies covering Defendant's claim in accordance with Fed. R. Civ. P. 26(a)(1)(D) within thirty days of this Order, if it has not already done so.

### 2. **Whether Documents Related to Communications with Reinsurers are Discoverable**

Plaintiff argues that this information is not discoverable because "communications between insurers and reinsurers will undoubtedly contain the legal opinions, evaluations and mental impressions of the insurer's counsel." (Pl. Mem. Opp. Mot. Compel at 10.) For support, Plaintiff cites Great American Surplus Lines Ins. Co. v. Ace Oil Co., 120 F.R.D. 533 (E.D. Cal. 1988) and Schachar v. American Acad. of Ophthalmology, Inc., 106 F.R.D. 187 (N.D. Ill. 1985). However, the Court finds that the instant case can be distinguished from those cases insofar as the parties in the cited cases stated which documents were privileged and why. See Great American Surplus, 120 F.R.D. at 535; Schachar, 106 F.R.D. at 191-92. Plaintiff has not done this. No privilege log has been provided. Plaintiff seeks to have the Court adopt its blanket contention that the desired communications will "undoubtedly" contain privileged material. The Court declines to do so. As discussed above, blanket assertions of privilege are inappropriate. See In re Milk Prods., 84 F. Supp. at 1028.

Courts that have addressed this issue have found that communications between insurers and reinsurers are discoverable. See Arkwright Mut. Ins. Co. v. National Union Fire Ins. Co., No. 90 Civ. 7811 (KC),

1993 WL 34678, at *1 (S.D.N.Y. Feb. 4, 1993); American Colloid Co. v. Old Republic Ins. Co., No. 93 C 0665, 1993 WL 222678, at *1 (N.D. Ill. June 21, 1992); Stonewall, 1988 WL 96159, at **5-6; National Union Fire Ins. Co. v. Continental Ill. Corp., 116 F.R.D. 78, 82 (N.D. Ill. 1987). The Court agrees with these courts that while reinsurance communications are not relevant to pure coverage issues, they may be relevant to other claims. See id.; Arkwright, 1993 WL 34678 at *1. In the instant case, Defendant has filed claims of bad faith and negligent/fraudulent inducement, in addition to its breach of contract claim. Reinsurance information will likely yield evidence relevant to these issues. Accordingly, this part of Defendant's motion is granted. Plaintiff must produce responsive documents within thirty days of this Order.

**D. Verification of Interrogatory Answers**

Defendant argues that the verification provided by David Cowles, Plaintiff's claim analyst, are insufficient. The Court has reviewed the verification and finds it acceptable. It is a standard verification explaining how Plaintiff's interrogatory answers were assembled. This part of Defendant's motion is denied.

**E. In-Camera Review**

In their motion papers, the Parties requested an in-camera review of six documents withheld as protected by either the work-product doctrine or attorney-client privilege. At the motion hearing, Plaintiff produced six

additional documents for review. The Court has performed a cursory examination of the documents and finds that it is unable to conduct a meaningful review without more information. At this point, the Court is not even sure which, if any, parties to the communications are attorneys.

Therefore, Plaintiff must submit an in-camera memorandum of law in which it identifies the parties involved in the communications; the parties who authored the documents; and states, with specificity, why it believes each individual document is privileged. This memorandum must be filed under seal with the Court within seven days of this Order.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

(1) Defendant's Motion to Compel Discovery (Doc. No. 26) is **GRANTED IN PART**, **DENIED IN PART**, and **DENIED AS MOOT IN PART** as set forth fully in the body of this Order;

(2) Plaintiff must fully respond to any outstanding discovery requests by September 3, 2002; and

(3) Plaintiff must file an in-camera memorandum of law regarding privileged documents by August 8, 2002.

Dated: August 1, 2002

JONATHAN LEBEDOFF
Chief United States Magistrate Judge