**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**INDIANA INSURANCE COMPANY, an Indiana Corporation,**

Plaintiff,

v.

**GRAND FOODS, INC., a Minnesota Corporation,**

Defendant.

Civil No. 01-177 (ADM/JGL)

**O R D E R**

APPEARANCES

Louise A. Behrendt, Esq., on behalf of Plaintiff

Robert P. Thavis, Esq., and Steven P. Zabel, Esq., on behalf of Defendant

JONATHAN LEBEDOFF, Chief United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Chief Magistrate Judge of District Court on August 15, 2002 on Defendant's Motion to Amend its Pleadings to Claim Punitive Damages (Doc. No. 33). The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

## I. FACTS

This case arises from an insurance coverage dispute. Defendant was a manufacturer of sandwiches which were sold in vending machines and

AUG 19 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

cafeterias. In March and April 2000, Defendant's facilities became contaminated with lysteria. Defendant immediately closed its facilities, but hoped to re-open once the problem was corrected. Defendant was unable to do so. Instead, Defendant found it necessary to relocate. Defendant asserts that Plaintiff concurred with this solution, promised the insurance monies necessary to make it possible, and encouraged Defendant to begin the process of relocating. The monies were never forthcoming and, in September 2000, Defendant ceased operations permanently.

In response to Defendant's request for insurance coverage, Plaintiff apparently took a variety of positions. According to Defendant, Plaintiff first denied coverage, then accepted coverage, then denied coverage again. Defendant asserts that it was forced to shut down operations because it was unable to relocate once Plaintiff refused to pay the costs of getting back into business.

Plaintiff brought a declaratory judgment action, arguing that under the insurance policy at issue in this case it was not liable for Defendant's losses. (Doc. No. 1.) Defendant filed counterclaims for, inter alia, breach of contract; negligent/fraudulent inducement; and bad faith "in failing to fairly investigate, evaluate, settle and resolve [Defendant's] claims." (Doc. No. 3 at 8, 10.) In the instant motion, Defendant seeks permission to amend its complaint to add claims for punitive damages under state law.

**II. DISCUSSION**

**A. Legal Standard**

Punitive damages are not intended to compensate a wronged party. See Ulrich v. City of Crosby, 848 F. Supp. 861, 867 (D. Minn.1994). Rather, punitive damages are intended to "both punish and deter" the wrongdoer and others from "intentional wrongs and deliberate disregard of the safety or rights of others." Molenaar v. United Cattle Co., 553 N.W.2d 424, 429 (Minn. Ct. App. 1996) (citing Rosenbloom v. Flygare, 501 N.W.2d 597, 601 (Minn. 1993)).

In the District of Minnesota, a party must follow the requirements of Minn. Stat. §§ 549.191 and 549.20 to plead punitive damages for claims brought pursuant to Minnesota state law. See Ulrich, 848 F. Supp. at 866 (citations omitted). A party seeking to assert a punitive damage claim may not include it in the initial complaint, but must move for leave to amend the complaint based on a prima facie showing of entitlement. See id. at 867; Minn. Stat. § 549.191. At this point in the litigation, "[t]he [party] is not required to demonstrate an entitlement to punitive damages per se, but only an entitlement to allege such damages." Ulrich, 848 F. Supp. at 867 (citation omitted).

Prima facie evidence is evidence which, if unrebutted, would sustain a judgment in the moving party's favor. See Swanlund v. Shimano Indus. Corp., 459 N.W.2d 151,154 (Minn. Ct. App. 1990) (citing Black's Law Dictionary 1071 (5th ed. 1979)). The term "prima facie" does not describe a

quantum of evidence, but a standard for designating meritorious claims. See id. The quantum of evidence needed to plead punitive damages is prescribed by Minn. Stat. § 549.20, subd. 1(a), which requires "clear and convincing evidence that the acts of the defendant show deliberate disregard for the rights or safety of others." To be clear and convincing, the proof must be more than a preponderance but less than beyond a reasonable doubt. See Weber v. Anderson, 269 N.W.2d 892, 895 (Minn. 1978). "Where the evidence is sufficient to permit the Jury to conclude that it is 'highly probable' that the defendant acted with deliberate disregard for the rights or safety of others, the 'clear and convincing' standard [is] satisfied." Olson v. Snap Prods., Inc., 29 F. Supp. 2d 1027, 1036 (D. Minn. 1998) (quoting Ulrich, 848 F. Supp. at 868) (internal citations omitted). Deliberate disregard is statutorily defined as follows:

> (b) A defendant has acted with deliberate disregard for the rights or safety of others if the defendant has knowledge of facts or intentionally disregarded facts that create a high probability of injury to the rights or safety of others and:
>
> (i) deliberately proceeds to act in conscious or intentional disregard of the high degree of probability of injuries to the rights or safety of others; or
>
> (ii) deliberately proceeds to act with indifference to the high degree of probability of injuries to the rights or safety of others.

Minn. Stat. § 549.20, subd. 1(b). The Court must not make any credibility determinations or consider any challenge to Plaintiff's evidence. See Swanlund, 459 N.W.2d at154.

**B. Whether Defendant May Plead Punitive Damages Under the State Law Claims Asserted**

Not only must a plaintiff put forth evidence, but it is axiomatic that a plaintiff must also show that punitive damages are allowed under the substantive law of the claims asserted. An examination of Plaintiff's evidentiary submissions without first determining whether the relevant law even permits punitive damages would be a futile exercise. Thus, the Court first turns to the question of whether punitive damages are allowed for the claims asserted by Plaintiff.

Defendant claims it is entitled to plead punitive damages under two theories: (1) that Plaintiff's breach of contract was accompanied by "exceptional circumstances" in which the breach itself constitutes an independent tort, and (2) that Plaintiff's misrepresentation constitutes a claim which is independent of the contract claim. Plaintiff responds that Defendant's claims are all inextricably linked to the breach of contract claim, and therefore punitive damages are not allowed under Minnesota law.

**1. Whether Defendant May Plead Punitive Damages Based on Plaintiff's Alleged Breach of Contract**

Ordinarily, a party alleging breach of contract is limited to the damages flowing from the breach. See Wild v. Rarig 234 N.W.2d 775, 789 (Minn. 1975). A party "must show more than malicious failure to pay an insurance claim in order to recover extra-contractual damages." Pillsbury Co. v. National Union Fire Ins. Co., 425 N.W.2d 244, 249 (Minn. Ct. App. 1988) (citation omitted). This is true except in "exceptional cases" where a defendant's breach of contract is accompanied by an independent tort. See Wild, 234 N.W.2d at 789; Hanks v. Hubbard Broad., Inc., 493 N.W.2d 302, 307-08 (Minn. Ct. App. 1992).

The Wild court proffered the following example of exceptional circumstances: A railroad has a duty to carry passengers to their destinations. That is the basis of the contract. However, extra-contractual damages are available to a passenger who suffers "willful and unlawful injuries" while riding the train. Such a situation creates an independent tort for the injury because the duty to keep the passenger safe "is an incident of the relationship rather than the contract, and the carrier would be liable if the passenger was carried free." Wild, 234 N.W.2d at 790.

In determining whether an independent tort exists such that extra-contractual damages are available, the Court must determine whether "a relationship [existed] which would give rise to [a] legal duty without enforcement

of the contract promise itself." Hanks, 493 N.W.2d at 308. To that end, a breach of contract does not give rise to a separate tort when "the breach of duty is indistinguishable from the breach of contract." Id.

Defendant relies on Pillsbury for the proposition that an insurer may be liable for punitive damages in a breach of contract case if the insurer fails to pay the insured when the insured's need is very great. The Court finds Defendant's argument misplaced. In fact, the Court finds that Pillsbury actually argues against allowing a claim for punitive damages in the instant case.[1]

In Pillsbury, the plaintiff, a packaged food manufacturer, purchased an insurance policy to protect itself against "catastrophic events such as the adverse effect on sales of publicity surrounding the discovery of potentially toxic materials in a food product." Pillsbury, 425 N.W.2d at 246-47. During the time that the plaintiff was insured under this policy, the state of Florida established new tolerance levels for pesticides in food products. See id. at 247. As a result of this new policy, there was widespread adverse publicity concerning packaged food products. See id. The plaintiff suffered losses in excess of $70 million, and submitted a claim to the defendant. See id. The defendant offered to settle the

---

[1]The passage relied on by Defendant is a quote from a torts treatise. See Pillsbury, 425 N.W.2d at 248-49 (quoting W. Page Keeton et al., Posser and Keeton on The Law of Torts § 92 (5th ed. 1984 & Supp. 1988)). Although Pillsbury has been cited in other decisions, the Court can find no decision which adopts, or even cites, this particular quote.

claim, and the plaintiff rejected the offer. The plaintiff then brought an action seeking, inter alia, punitive damages for bad faith breach of the insurance contract. See id. The Minnesota Court of Appeals rejected this argument stating that the plaintiff had failed to cite any circumstance which evidenced an independent tort. See id. at 249.

Such is the case here. Defendant has failed to demonstrate that Plaintiff's actions, arguably malicious though they may be, constitute a separate tort. See Wild, 234 N.W.2d at 790 (citation omitted). Every insurance claim involves an arguably "great need" on the part of the insured. To be sure, the closing of a business is the ultimate damage a corporate insured can suffer; yet, the Court finds that Defendant's damages, if they can be attributed to Plaintiff at all, "naturally and proximately [flowed]" only from Plaintiff's alleged breach. Pillsbury, 425 N.W.2d at 248 (citing Olson v. Rugloski, 277 N.W.2d 385, 387 (Minn. 1979)). Defendant has failed to convince the Court that Plaintiff's conduct was associated with anything other than the alleged breach of contract. See id. at 250-51. Accordingly, this part of Defendant's motion is denied and Defendant will not be allowed to amend its complaint to add a claim for punitive damages based on the theory that Plaintiff's breach constitutes an independent tort.

**2. Whether Defendant May Plead Punitive Damages For Defendant's Alleged Misrepresentation**

Defendant argues that its counterclaims for misrepresentation and fraud will support an award of punitive damages. (Def. Mem. Supp. Mot. Amend at 16.) Defendant has filed a counterclaim for negligent/fraudulent inducement. (Doc. No. 3 at 8-9.) Specifically, Defendant asserts that Plaintiff promised to provide coverage; demanded that Defendant relocate immediately, at great expense to Defendant; and subsequently refused to pay the relocation costs. Defendant argues that these actions have resulted in damages which are "separate and independent" from any damages flowing from Plaintiff's breach of contract. (Pl. Mem. Supp. Mot. Amend at 17.) The Court disagrees.

Although fraud or misrepresentation can support a claim for punitive damages, see Commercial Prop. Inv., Inc. v. Quality Inns Int'l, Inc., 938 F.2d 870, 878 (8th Cir. 1991); Vikse v. Flaby, 316 N.W.2d 276, 286 (Minn. 1982); Hanks, 493 N.W.2d at 310-11, in the context of a breach of contract case, that fraud must be distinct from the breach. See id. at 308. As stated above, the test is "whether a relationship would exist which would give rise to the legal duty without enforcement fo the contract promise itself." Id. In the instant case, the alleged fraud is not distinct from the alleged breach of contract, and does not evidence a relationship which exists outside the parameters of contract. Therefore, Plaintiff's alleged misrepresentation cannot support an award of punitive damages.

The instant case can be distinguished from the cases Defendant cites to support the contention that its misrepresentation claim constitutes a tort which is separate from its breach of contract claim. Defendant cites McDonald v. Johnson & Johnson, 537 F. Supp. 1282 (D. Minn. 1982). McDonald can be distinguished from the instant case because in McDonald, the plaintiff claimed that the defendant fraudulently induced it into contracting with the defendant. See id. at 1352. The McDonald plaintiff stated that it would never have entered into the contract if not for the fraudulent representations. See id. at 1353. This fraud was separate from any subsequent breach of the resulting contract. See id. at 1348-52.

The same is true of Hanks, which Defendant cited during the motion hearing. In Hanks the Minnesota Court of Appeals held that an employee's misrepresentation claim was separate from her breach of contract claim because the misrepresentation was based on promises to promote, and the employment contract at issue was silent on promotion. See Hanks, 493 N.W.2d at 308, 310. That is not the case here. The Court finds that Plaintiff's promises and representations were all made while performing, or failing to perform, under the contract. The alleged misrepresentation is therefore inextricably tied to Defendant's breach of contract claim and cannot provide the basis for an award of punitive damages. "The tortious acts [Defendant alleges] . . . are all connected with [Plaintiff's] failure to pay . . . [the] insurance claim in

the manner [Defendant] felt it should have been paid. The failure to pay an insurance claim in itself, no matter how malicious, does not constitute a tort; it constitutes breach of an insurance contract." Webster Truck & Caster Co. v. Nutting Co., No. CV. No. 3-88-662, 1989 WL 222673, at *1 (D. Minn. Feb. 6, 1989) (citing Saltou v. Dependable Ins. Co., 394 N.W.2d 629, 633 (Minn. Ct. App. 1986)).

Defendant also cites Molenaar v. United Cattle Co., 553 N.W.2d 424 (Minn. Ct. App. 1996). Defendant's reliance on Molenaar is misplaced because Molenaar involved a conversion claim, rather than a contract claim. See, e.g., id.

Lastly, Defendant cites Cherne Contracting Corp. v. Wausau Ins. Co., 572 N.W.2d 339 (Minn. Ct. App. 1998) for the proposition that "an independent tort is one that is not 'tied to and dependent on' a breach of contract claim." (Def. Mem. Supp. Mot. Amend at 17.) While the Court agrees with this statement, the Court fails to understand how Cherne supports Defendant's argument. In Cherne, the Minnesota Court of Appeals held that an insurance company's responsibility to establish good faith did not constitute a separate tort because any such duty was not independent from the insurance company's contract obligations. See id. at 343. The same can be said of Plaintiff's duty to refrain from misrepresentation in coverage negotiations. To this end, the Court finds unpersuasive Defendant's argument that once Plaintiff

accepted coverage, new duties were created which were separate from the contractual duties. Acceptance or denial of coverage, and the duties that arise because of those decisions, are most certainly contemplated at the time of contracting and, as such, any breach flowing from those duties is merely a breach of the contract. See Pillsbury, 425 N.W.2d at 248. The Court agrees with the Cherne court which stated, "[Defendant's] claim arose from the insurance contract at issue; without such contract there would have been no relationship between the parties, and no basis for liability. Therefore, there was no duty independent of the contract." Cherne, 572 N.W.2d at 343-44. Accordingly, Defendant's motion must be denied on this basis also. Since the Court has found that Defendant's claims cannot support an award of punitive damages, it need not reach the issue of whether Plaintiff's conduct meets the requirements of Minn. Stat. § 549.20.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Amend its Pleadings to Claim Punitive Damages (Doc. No. 33) is **DENIED**.

Dated: August 19, 2002

JONATHAN LEBEDOFF
Chief United States Magistrate Judge